# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
## CIVIL CASE NO.

**JORGE L. VALDES**
    *Plaintiff,*

**v.**

                       **JURY TRIAL DEMANDED**

**MIAMI-DADE SHERIFF'S OFFICE,** a political
subdivision in the state of Florida, **MIAMI-DADE COUNTY,**
a political subdivision in the state of Florida,
**JORGE ESTEPAN** in his individual capacity,
    *Defendants.*
_____/

---

# COMPLAINT

---

**COMES NOW Plaintiff, JORGE VALDES,** (hereinafter "Plaintiff" or "Mr. Valdes") by

and through his undersigned attorneys, and files this his Original Complaint against the

Defendants, **MIAMI-DADE SHERIFF'S OFFICE** ("MDSO"), a political  subdivision in

the state of Florida, **MIAMI-DADE COUNTY** ("MDC"), a political subdivision in the

state of Florida,  **JORGE ESTEPAN**, (hereinafter "Estepan") (collectively "Defendants").

and so states:

## I.    INTRODUCTION/NATURE OF THIS ACTION

This is an action for damages pursuant to the Fourth Amendment with 42 U.S. C.

§1983 as the enabling statute and Florida state law for damages Defendants caused

Plaintiff Mr. Valdes during unlawful seizure, detention, arrest, confinement, and exces

sive force take-down in Miami-Dade County at an unlawful traffic stop.  All charges

against Mr. Valdes were dropped. Miami-Dade County's Police Department, now Miami-Dade Sheriffs Office,  also has a custom, practice, and/or unwritten policy of, and deliberate indifference to, constitutional deprivations of the citizenry by its officers.

## II.   <u>JURISDICTION, VENUE, AND PARTIES</u>

1.  Jurisdiction is properly invoked in this court pursuant to 42 U.S.C.§§ 1983 and 1988, the Fourth Amendment to the United States Constitution, and tort laws of Florida. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, 42 U.S.C. § 1983 and under the tort laws of Florida. Supplemental jurisdiction for additional state law claims is proper pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy. Plaintiff seeks damages exceeding the statutory minimum of  $75,000, exclusive of costs and interests.

2.  Venue is proper under 28 U.C.S. § 1391(b)(2) because a substantial part of the events or omissions accruing these claims occurred in this judicial district and division.

3.   Plaintiff, **JORGE L. VALDES**, at all times material hereto, was over the age of 18 years, a resident of Miami-Dade County, Florida, and otherwise *sui juris*.

4.  Defendant, **MIAMI-DADE SHERIFF'S OFFICE**, ("MDSO"), previously known as the Miami-Dade County Police Department prior to the election of a Sheriff last year, is the employer of the sworn law enforcement officers sued herein, who may now be interchangeably referred to as deputies by some agencies.  MDSO is the final decision-maker for policy, hiring, retention, and training; decision-maker alone or in delegation/conjunction to/with Miami-Dade County which previously employed the Miami-Dade County Police Department prior to the election of a Sheriff last year and at the time of the facts giving rise to the instant Complaint.  At all times material hereto, Defendant Jorge

Estepan was an on-duty sworn law enforcement officer employed by then Miami-Dde County Police Department ("MDCPD") which is now the MDSO, acting within the scope of his employment under color of law. MIAMI-DADE SHERIFF'S OFFICE is being sued in its official capacity.

5.  Defendant, **MIAMI-DADE COUNTY**, ("MDC"), was the prior employer of the Miami-Dade County Police Department ("MDCPD") before the election of a Sheriff last year, at which all Defendant officers were employed at all times material hereto.  Due to the election of a Sheriff last year, MDC is no longer the employer of the Defendant police officers named herein,  but was at all times material hereto when the facts giving rise to this incident occurred,   the final decision-maker for policy, hiring, retention, and training; decision-maker alone or in delegation/conjunction to/with its Director of the MDCPD, staff, agents, CEO/county mayor, and assigns.  At all times material hereto, Defendant Jorge Estepan was an on-duty sworn law enforcement officer employed by MDC) which is now the MDSO, acting within the scope of his employment under color of law. MIAMI-DADE COUNTY is being sued in its official capacity.

6.  Defendant, **JORGE ESTEPAN** ("Estepan"), was at all times material hereto a duly appointed and sworn on-duty law enforcement officer of the MDCPD acting under color of law and within the scope of his employment, who violated the constitutional rights of Plaintiff JORGE VALDES.  JORGE ESTEPAN is being sued in his individual capacity.

7.  Plaintiff has met all conditions precedent to proceed with this action.

## III.  GENERAL FACTS

8.  On May 25, 2021, Defendant Officer Jorge Estepan was an on-duty sworn police officer actively employed by and working for Miami-Dade County's Police

Department ("MDCPD") acting under color of law and within the scope of his employment when he encountered Plaintiff Mr. Jorges Valdes at a traffic light, initiated a traffic stop, and arrested Mr. Valdes.

9. Mr. Valdes was the driver, and no passengers were in his vehicle.

10. Officer Estepan effected an unlawful traffic stop of/on Mr. Valdes.

11. As shown on the officer's body-worn camera, Mr. Valdes was wearing his seat belt.

12. Mr. Valdes had not committed any crime.

13. Without arguable probable cause or probable cause, Officer Estepan initiated a pretextual traffic stop of Mr. Valdes, falsely stating that Mr. Valdes' permanent/metal "tag was messed up…it's bent upward, it's supposed to be straight."

14. However, Body-Worn Camera ("BWC") showed that Mr. Valdes' metal tag was properly fully visible and positioned at the rear of his car, and not "bent upward" or "messed up."

15. Estepan approached Mr. Valdes' vehicle and demanded license and registration, to which Mr. Valdes complied.

16. Without warning or first instructing Mr. Valdes to exit the vehicle or open the door, Officer Estepan then opened Mr. Valdes' driver side car door where Mr. Valdes was seat-belted trying to get his license as instructed.

17. Reasonably afraid, Mr. Valdes informed Officer Estepan that he was recording the encounter with a cellphone.

18. Estepan then told Mr. Valdes to exit the vehicle, but when Mr. Valdes complied by placing one foot out of his car to exit, Estepan GRABBED Mr. Valdes' hands inside the vehicle and HANDCUFFED Mr. Valdes while Mr. Valdes was still inside Mr. Valdes' car.

19. Estepan then proceeded to repeatedly punch the handcuffed Mr. Valdes while physically on top of Mr. Valdes inside the carMr. Valdes was still seat-belted in as well, begging for Estepan to stop punching him.

20. Estepan placed pressure on Mr. Valdes' neck while on top of him inside the car, reasonably making Mr. Valdes fear that Mr. Valdes was about to pass out.

21. Estepan choked Mr. Valdes.

22. At some point, Estepan stopped beating Mr. Valdes, but then falsely stated that the handcuffed Mr. Valdes hit him first, in attempt to conceal his unlawful use of force against Mr. Valdes.

23. Estepan dragged Mr. Valdes out the car onto the road beside the driver's side door, while Mr. Valdes was still handcuffed and tangled into the seatbelt from inside the car.

24. Mr. Valdes was reasonably scared for his life.

25. Other MDCPD/MDSO officers arrived on the scene where Mr. Valdes was still seated outside on the road by his driver's side door, still tangled within the seat belt from inside the car, still handcuffed, and where Estepan was still present.

26. Estepan falsely stated to the other officers that Mr. Valdes tried to put the car in drive and drive away; and that Mr. Valdes initiated this escalation of this traffic stop by punching Estepan.

27. Although Mr. Valdes required and requested medical assistance, Estepan and the other officers stood around Mr. Valdes refusing to assist him, instead telling him that he must first get back into his driver's seat on his own from the seated handcuffed position on the road.

28.  Officer Estepan also did not document truthfully on his police report as to the facts of

what occurred of him initiating unlawful use of force against Mr. Valdes, nor of his un-

lawful traffic stop of Mr. Valdes.

29. The Officers laughed at Mr. Valdes seated on the road, handcuffed, tangled within a seat-

belt, asking for medical assistance.

30. Estepan arrested Mr. Valdes and charged Mr. Valdes with resisting arrest without

violence and disturbing the peace/disorderly conduct.

31. Due to Mr. Valdes' injuries caused by Estepan and exacerbated by the refusal to

administer needed and necessary treatment at the scene by Estepan and the other

MDCPD officers, the jail would not accept Mr. Valdes when Officer Estepan took

him to jail, without first instead requiring medical clearance for Mr. Valdes' injuries.

32. Mr. Valdes had to be taken to the hospital due to multiple injuries.  Mr. Valdes' neck was

swollen from where Officer Estepan had choked him.  Mr. Valdes' face, neck, and upper

body were bruised.  His arm was injured where he couldn't initially move his arm, and

his arm was placed in a sling.  He suffered a contusion to his right arm.  He was in severe

pain.  Was prescribed pain medications.  Had to have follow-up physician visits.  He wore

the sling for at least 3 weeks. Can't recall if he was employed at that time.  Stated he had

just left his job, but was a line cook at a restaurant in the Florida Keys while living in

Homestead.  He still suffers physical pain in arm and neck.  No pain medications.. (He

had four screws in his head from a prior injury where he broke his neck in 2009 jumping

into a pool, but they have been removed.)

33. All charges against Mr. Valdes were dropped:  (1) resisting arrest without violence

and (2) disturbing the peace/disorderly conduct, were dropped. (Misdemeanor Case

No. M21- 010749, and consolidated Traffic Case/Citation No. #AEFY6ME).

34. Defendants caused Mr. Valdes significant damages.

35. Miami-Dade County's Police Department, now Miami-Dade Sheriffs Office,  has a custom, practice, and/or unwritten policy of, and deliberate indifference to, constitutional deprivations of the citizenry by its officers

## IV. CAUSES OF ACTION

### COUNT I:
### FOURTH AMENDMENT: FALSE ARREST/FALSE IMPRISONMENT (42 U.S.C. §1983): DEFENDANT ESTEPAN

36. Plaintiff re-alleges and incorporates paragraphs 1 – 35 as if pled herein.

37. At all times material hereto, no probable or arguable probable cause or reasonable suspicion existed for Estepan's seizure, arrest, confinement, and/or detention of Mr. Valdes.

38. Estepan knew no probable or arguable probable nor reasonable suspicion existed to seize, arrest, confine, and/or detain Mr. Valdes.

39. Estepan's traffic stop of Mr. Valdes was unlawful.

40. Estepan still seized, arrested, confined, and detained Mr. Valdes anyway, without the consent of Mr. Valdes for any arrest, seizure, detention, or confinement.

41. Any objectively reasonable officer would have known that Officer Estepan had no lawful right to arrest, detain, seize, and/or confine Mr. Valdes, and even Officer Estepan knew his actions were unlawful and unlawful deprivations of Mr. Valdes' clearly established Fourth Amendment rights named herein, which was the reason Estepan falsified the police report in furtherance of those deprivations as per the custom and/or unwritten policy of MDCPD  to conceal illegal activity and deprivations of the constitutional rights of the citizenry. and here individually, Mr.

Valdes.

42. All charges against Mr. Valdes were dropped.

43. Estepan's actions against Mr. Valdes were unlawful and an unlawful deprivation of Mr. Valdes' clearly established Fourth Amendment right to be free from unlawful seizures, arrest, confinement, and/or detention.

44. As a direct and proximate result of Estepan's actions, Mr. Valdes suffered immediate and ongoing physical injuries and pain, wrongful incarceration, a false criminal record for disorderly conduct and resisting arrest although the charges were dropped, lost income/wages, other financial loss/expenses, was required to retain counsel to bring forth the instant litigation, and suffered mental pain and anguish, public embarrassment, humiliation, loss of reputation, fear of police, inconvenience, loss of opportunity, loss of enjoyment, and decreased quality of life.

**Wherefore,** Plaintiff seeks trial by jury and entry of an Order for final judgment against Defendant Estepan for compensatory and punitive damages, attorneys fees, costs, and such other relief that this Court deems just and proper.

## COUNT II
## FOURTH AMENDMENT: EXCESSIVE FORCE (42 U.S.C. §1983)
## DEFENDANT ESTEPAN

45. Plaintiff re-alleges and incorporates paragraphs 1-35 as if pled herein.

46. At no time during Estepan's actions herein against Mr. Valdes did any threat of imminent or serious bodily harm, or harm, exist to Estepan or any person at the scene.

47. Mr. Valdes was not armed.

48. At no time did Mr. Valdes resist any lawful arrest or lawful order from Estepan or

any officer on the scene.

49. At no time material hereto did Mr. Valdes threaten Estepan or any other officers on the scene, violently resist arrest, act with violence, physically initiate contact with Estepan or any other officers on the scene, or perform any gesture or movement causing or provoking the need for physical force.

50. *To wit*, Mr. Valdes was still seat belted in his car throughout this entire encounter, to include after Estepan dragged Mr. Valdes out of Mr. Valdes' car still tangled within his seat belt after being beaten by Estepan.

51. *To wit* as well, *Estepan* charged Mr. Valdes with resisting with**out** violence.

52. There was no need for Estepan to use force against Mr. Valdes, and the amount of force Estepan used against Mr. Valdes was unlawful, excessive, and more than the amount of force needed to detain or arrest Mr. Valdes.

53. At no time did Mr. Valdes consent to Estepan's physical contact, use of force, arrest, detention, seizure, or confinement of Mr. Valdes.

54. Estepan's physical punching, choking, dragging, and application of physical pressure against Mr. Valdes exceeded any amount of force needed to detain and arrest Mr. Valdes, was unjustifiable force, and his seizure, detention, arrest, and takedown of Mr. Valdes were unlawful deprivations of Mr. Valdes' clearly established Fourth Amendment right to be from excessive force.

55. Officer Estepan's unlawful and unjustifiable deployment of physical force against Mr. Valdes caused and resulted in significant physical injury to Mr. Valdez.

56. Any objectively reasonable officer would have known that Officer Estepan had no lawful right to deploy physical force against Mr. Valdes, and even Officer Valdes

knew his actions were unlawful and unlawful deprivations of Mr. Valdes' clearly established Fourth Amendment right to be free from excessive force, and Estepan thereby falsified the police report because he knew he had acted unlawfully against Mr. Valdes.

57. At all times material hereto, Mr. Valdes had a clearly established Fourth Amendment right to be free from excessive force.

58. As a direct and proximate result of Estepan's actions, Mr. Valdes suffered significant immediate and ongoing physical injury and physical pain which required medical attention, lost income, other financial losses/expenses; long-term/still suffers back pain;  mental pain and anguish, public embarrassment, humiliation, loss of reputation, loss of enjoyment of life, inconvenience, and decreased quality of life, and was forced to hire counsel to bring forth the instant civil action.

      **Wherefore,** Plaintiff seeks trial by jury and entry of an Order for final judgment against Defendant Estepan for compensatory and punitive damages, attorneys fees, costs, and such other relief that this Court deems just and proper.

### COUNT III
### MONELL CLAIM:  CIVIL RIGHTS VIOLATIONS
### MIAMI-DADE COUNTY AND MIAMI-DADE SHERIFF'S OFFICE

59. Plaintiff re-alleges and incorporates paragraphs 1 – 35 as if pled herein.

60. This claim is brought pursuant to 42 U.S.C. §1983 for violation of the Fourth Amendment to the United States Constitution.

61. At all times material hereto, Plaintiff Mr. Jorge Valdez had a clearly established Fourth Amendment right to be free from unlawful seizures, detention, arrest, confinement, and/or excessive force.

62. Defendants MDC and MDSO was at all times material hereto, and to date continue to be, respectively, the employer of Estepan, and final decision and policy maker for its officers/deputies, even when and if delegating its responsibilities to its then Director or now Sheriff or other supervisors. (The title of "Director" was synonymous to police chief in MDCPD prior to election of a Sheriff.) Defendants are each a person within the meaning of 42 U.S.C. §1983.

63. Defendant MDC was at all times herein, responsible for the policies, procedures, customs and/or practices implemented and utilized, including the supervision, training, discipline, retention, conduct and control over law enforcement officers, and employees including Defendant Estepan.

64. Defendant MDSO continues to be responsible for the policies, procedures, customs and/or practices implemented and utilized, including the supervision, training, discipline, retention, conduct and control over law enforcement officers, and employees including Defendant Estepan.

65. Having only changed its CEO from the County Mayor to now a Sheriff, while still retaining the same officers including Estepan and the officers who responded to the scene of the false arrest of Mr. Valdes; kept the same substantive policies and procedures in place; and even its now Sheriff Cordero-Stuntz having been employed by MDC as an officer prior to being elected Sheriff, MDC and MDSO are one in regarding to liability, with joint and several liability, for the purposes of this action.

66. They are thereby further referred to in this count interchangeably collectively as "Defendants" or "Defendants MDC and MDSO."

67. At all times material herein, Defendants, through their final policymakers in charge of law enforcement officers, and employees, engaged as a matter of policy,

practice or custom in inadequate training, false arrest and imprisonment, excessive force, falsification of police reports, and inadequate supervision, and negligent retention of its officers and employees with reckless disregard and deliberate indifference to the rights of the County's inhabitants with whom the officers and employees come into contact, including and specifically, **JORGE VALDES.**

68. At all times material hereto, Defendants were deliberately indifferent to the need for better training and supervision of its officers, and it was highly predictable that its officers and employees engaged and/or would engage in false arrest/imprisonment, unlawful seizures and detention, excessive force, and falsification of police reports against the citizenry, and  its officers did commit false arrest and violations of the 4th Amendment rights of Plaintiff herein.

69. The actions of  Defendants, acting under the color of state law, deprived  **JORGE VALDES** of his rights, privileges and immunities under the laws and Constitution of the United States, including but not limited to the right to be secure in his person and property, to be free from unreasonable searches and seizures, to be free from being falsely arrested and subjected to false police reports in substantial furtherance of that false arrest, and to be free from excessive force.

70. By its actions as set forth herein, Defendants deprived **JORGE VALDES** of rights secured by the Fourth Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.

71. As a direct and proximate result of Defendants actions, and omissions, the Plaintiff was deprived of rights, privileges and immunities under the Fourth Amendment

of the United States Constitution and the laws of the State of Florida and sustained

significant, cognizable and permanent injuries

72. At all times material to this action, Defendants had policies, customs, practices and/or procedures that were the direct and proximate cause of the unconstitutional unlawful arrest, seizure, detention, confinement, making false reports/records, and excessive force against Plaintiff.

73. Defendants' above-mentioned unwritten policies, customs, practices and/or procedures included, but are not limited to, the following:

   a. Permitting its Officers to illegally and unlawfully seize, detain, arrest, and/or confine citizens without probable or arguable probable cause or reasonable suspicion.  Pursuant to, caused by, and/or as a result of this custom, practice, and/or unwritten policy, its officers unlawfully and illegally seized, detained, arrested, and confined Plaintiff without probable or arguable probable cause or reasonable suspicion when they effectuated an illegal traffic stop of Valdes, unlawfully detained, confined, and arrested him, and unlawfully deployed physical force, excessive force, and committed battery against him.[1]

---

[1] Examples include but are not limited to: 1) In 2020, a year prior to MDCPD's unlawful acts against this Plaintiff Mr. Valdes, MDCPD unlawfully arrested and deployed excessive force against another unarmed citizen, and wrote a false police report to conceal their actions.  The charges against that citizen, Mr. Kenny Ortega, were dropped. The MDCPD Officer (Joseph Diaz) was arrested for battery and falsification of a police report.  Mr. Ortega's federal case is currently open in this District Cout (**1:24:cv-22523**). 2) In 2019, four MDCPD officers deployed excessive force against an innocent bystander and known innocent hostage during a police chase of two robbers who had hijacked a UPS driver's truck.  Despite other alternatives, MDCPD officers chased the vehicle throughout open public streets spraying gunfire against innocent individuals.  This chase and shootings were very highly publicized throughout the media.  MDCPD's final decision makers were on notice of the constitutional deprivations of excessive force by those officers but continued to employ and defend the deprivations by those officers and chose not to train and/or ensure its officers were adequately trained nor adequately supervise in/regarding excessive force. Those four officers were recently indicted by a grand jury for manslaughter.  It was the investigation by the prosecutor in Broward County which led to their indictment, not that the County terminated them or sought arrest of

b. Permitting its officers to unlawfully and illegally use physical force and/or more physical force than necessary to seize, detain, arrest, and/or confine shirtless unarmed Plaintiff and citizens who are not resisting; passively resisting; and if resisting, doing so without violence.  To this end, Defendants have a history of and a policy, practice or custom, either written or unwritten, permitting its officers to unlawfully and illegally use physical force and/or more physical force than necessary or justifiable to seize, detain, arrest, and/or confine the citizens.

c. Permitting its officers to unlawfully and illegally touch, grab and/or strike Plaintiff and citizens without consent, who are not resisting, or passively resisting, if resisting at all, and causing physical injury pursuant to an unlawful and illegal seizure, detention, arrest, and confinement, To this point, Defendants have a history of and a policy, practice or custom, either written or unwritten, of permitting its officers to unlawfully and illegally touch, grab, and/or strike the citizens and cause physical injury pursuant to an unlawful and illegal seizure, detention, arrest, and confinement.

d. Permitting officers to produce, file and submit false reports misrepresenting, manufacturing and/or fabricating events, or evidence during an arrest or

---

the officers; the County is openly defending their actions. 3) In 2018, MDCPD threw a wheelchair-bound, double-amputee Ms. Mary Brown to the ground for alleged trespassing and panhandling $1 in the parking lot of a Chevron gas station, with one of the officers caught on body-worn camera stating that he would "roll her out of" the wheelchair if she didn't' get into the police car. MDCPD retained those officers; openly defended them; and instead wrongfully issued a blanket statement it would delegate its use-of-force training to a/some unknown disability organization after receiving public backlash. 4) In 2016, MDCPD Officers Rafael Duran and George Price were convicted and pled guilty, respectively, to federal charges of a fraudulent scheme based on them falsifying multiple police reports and causing those reports ant those reports were made part of MDCPD's official records.

investigation of Plaintiff and citizens.  To this point, Defendant has a history of and a policy, practice or custom, either written or unwritten, of permitting officers to produce, file and submit false reports misrepresenting, manufacturing and/or fabricating events, or evidence during an arrest or investigation of  citizens.

74. Defendants have failed and have a history of failing to prevent the conduct which befell Mr. Valdes, in that there are past and current complaints and cases, to take reasonable measures to provide officers and employees with adequate training in the proper, valid, and constitutionally mandated procedures and protocols in the application of lawful seizure, arrest, detention, and confinement, and lawful and true completion of police reports.

75. Additionally, Defendants failed to provide for adequate appropriate investigation and punishment of its officers' for the unwarranted and unlawful violations of citizen's 4th Amendment rights, particularly of Plaintiff's herein,  and regarding the proper application of lawful seizure, arrest, detention, and confinement, and lawful and true completion of police reports.

76. Said actions and inactions constitute a breach of its duties to train qualified officers, establish departmental procedures and methods to enforce protection of constitutional rights, and correct misconduct of its officers of which it had actual or constructive notice.  Prior to the violations of the 4th Amendment rights Mr. Jorge Valdes sued upon herein, this conduct of the Defendants had become a custom, pattern, practice, procedure, decision, and/or policy of failing to prevent, and thereafter minimizing the consequences of, police misconduct, undertaken with

deliberate indifference to the risk it created that t Defendant's officers and employees would unlawfully seize, arrest, detain, and confine citizens without probable or arguable probable cause or reasonable suspicion in the performance of their police duties, which resulted in directly and proximately causing the violations of the constitutional rights of  Mr. Valdes during the unlawful seizure, arrest, detention, and confinement by Estepan.

77. Defendants  also ratified the violations of the Plaintiff's constitutional rights as described herein by approving and acquiescing to the decisions and the basis of the decision of the deputies and detectives involved in the incident and the violations of Mr. Valdes' 4th Amendment rights described herein.

78. To this point, the Defendants took no disciplinary, investigative or administrative action whatsoever against those involved in the trampling of Mr. Valdes' civil rights, but instead, made public statements supporting the conduct of Estepan and the employees involved, and continues to do so.

79. In fact, the Miami-Dade State Attorney publicly investigated and arrested multiple of Defendants' officers for excessive force/battery and/or falsifying a police report.

80. Defendants have, with deliberate indifference, adopted, implemented and/or executed the above policies and/or practices and/or procedures and/or customs which were directly responsible for deprivation of the constitutionally protected rights   Mr. Valdes and, in doing so, misused the power possessed by virtue of state law and made possible only because Defendant was clothed/cloaked with the authority of state law.

81. Therefore, at all times material hereto, Defendants were on actual or constructive notice and/or should have known that its officers were committing excessive force, false arrest/false imprisonment, unlawful seizures, and falsification of police reports in deprivation of the clearly established constitutional Fourth Amendment rights of the citizenry and persons it engaged or placed into its custody, and here individually and specifically, Mr. Valdes.  Yet, the County's final decision-makers took no substantial steps to cause these deprivations to cease, but instead chose to turn a blind eye in total disregard to the deprivations by its officers and the impact of those deprivations on the citizenry and here specifically and individually, Mr. Valdes.

82. As a direct and proximate result of the actions and inactions of Defendant, alleged herein, Mr. Valdes' constitutional rights were violated by Defendant and its employees and/or agents, *inter alia*, through actions and inactions that culminated in permanent injuries and damages to  Mr. Valdes.

83. As a direct and proximate result of Defendants' deliberate indifference, failure to train, failure to supervise/negligent supervision, and negligent retention, Mr. Valdes suffered false arrest, false imprisonment, unlawful and excessive force, unlawful detention and seizure, a criminal record, wrongful incarceration, lost wages and income, physical injury and pain, long-term/ongoing back pain, and mental pain and anguish, anxiety, fear, inconvenience, loss of opportunity, public humiliation, loss of reputation, and loss of dignity/quality of life, and had to retain counsel to bring forth these claims..

**Wherefore,** Plaintiff seeks trial by jury and entry of an Order for final

judgment against Defendants MDC and MDSO for compensatory damages, attorneys fees, costs, and such other relief that this Court deems just and proper.

## STATE CLAIMS

### COUNT IV: RESPONDEAT SUPERIOR
### DEFENDANTS MIAMI DADE COUNTY AND MIAMI-DADE SHERIFF'S
### OFFICE

84. Plaintiff re-alleges and incorporates paragraphs 1 – 35 as if pled herein.

85. Defendants MIAMI-DADE COUNTY and MIAMI-DADE SHERIFF'S OFFICE are being sued in their official capacity.

86. Defendants MDC and MDSO are liable for the wrongful and/or negligent acts of its employees working withing the scope of their employment.

87. At all times material hereto, Defendant Estepan was an on-duty uniformed sworn law enforcement officer employed by MDC, now MDSO, working within the course and scope of his employment and color of law.

88. At all times material hereto, Defendant Estapan was an on-duty sworn law enforcement officer employed by Defendant MDC, now MDSO, working within the course and scope of his employment when committing the acts of false arrest, false imprisonment, excessive force, and all other claims asserted herein against Plaintiff.

89. Pursuant to Fed. R. Civ. P 8(d), in the alternative to the contrary allegations set forth in this Complaint, Mr. Valdes alleges that Defendant Estepan did not commit the False Arrest/False Imprisonment named and Excessive Force herein in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

90. Defendants MDC and MDSO are therefore liable despite any statutory limi-

tation it may attempt to assert excluding its liability based on arguments that its Defendant Odor acted outside his scope of employment.

**Wherefore,** Plaintiff seeks entry of an Order for final judgment against Defendants MIAMI-DADE COUNTY and MIAMI-DADE SHERIFF'S OFFICE for compensatory damages, attorney's fees, costs, and such other relief that this Court deems just and proper.

## COUNT V: BATTERY
### DEFENDANT ESTEPAN

91. Plaintiff re-alleges and incorporates paragraphs 1- 35 as if pled herein.

92. At all times material hereto, Estepan unlawfully, without consent, and without provocation touched, grabbed, repeatedly punched, dragged, and choked, Mr. Valdez, causing physical injury which also required medical attention.

93. At no time did Mr. Valdes consent to be seized, grabbed, struck, punched, choked, or touched by Estepan, and at all times material hereto Estepan's seizure, grabbing, choking, dragging, punching and/or striking, and touching of Mr. Valdes was without Mr. Valdes' consent, more than incidental, intentional, unjustified, unnecessary, not in self-defense, not pursuant to a lawful arrest, and unlawful.

94. Mr. Valdes was a seat belted man in his car, and Valdes knew or should have known that his actions herein would cause physical injury to Mr. Valdes,, and Estepan's actions did in fact physically injure Mr. Valdex.

95. All of Estepan's charges against Mr. Valdes were dropped.

96. As a direct and proximate result of Estepan's battery against Mr. Valdes, Mr. Valdes suffered immediate and ongoing physical pain including back pain, neck pain, arm pain; ongoing back pain; public humiliation, lost income and wages, mental

pain and anguish, loss of dignity, fear of police, inconvenience, and public embarrassment, and was forced to hire counsel to bring forth this action to recover the damages inflicted upon him by Estepan.

**Wherefore,** Plaintiff Mr. Valdes seeks trial by jury and entry of an Order for final judgment against Defendant Estpean for compensatory and punitive damages, attorneys fees, costs, and such other relief that this Court deems just and proper.

## <u>COUNT VI: FALSE ARREST/FALSE IMPRISONMENT</u><br><u>DEFENDANT ESTEPAN</u>

97. Plaintiff re-alleges and incorporates paragraphs 1- 35 as if pled herein.

98. At all times material hereto, Estepan unlawfully, without consent, and without provocation touched, grabbed, repeatedly punched, dragged, and choked,  Mr. Valdez, causing physical injury which also required medical attention.

99. At no time did Mr. Valdes consent to be seized, grabbed, struck, punched, choked, or touched by Estepan, and at all times material hereto Estepan's seizure, grabbing, choking, dragging, punching and/or striking, and touching of Mr. Valdes was without Mr. Valdes' consent, more than incidental, intentional, unjustified, unnecessary, not in self-defense, not pursuant to a lawful arrest, and unlawful.

100.    All of Estepan's charges against Mr. Valdes were dropped.

101.    As a direct and proximate result of Estepan's battery against Mr. Valdes, Mr. Valdes suffered immediate and ongoing back pain, neck pain, and arm pain; ongoing back pain; public humiliation, lost income and wages, mental pain and anguish, loss of dignity, fear of police, inconvenience, and public embarrassment, and was forced to hire counsel to bring forth this action to recover the damages inflicted upon him by Defendant.

**Wherefore,** Plaintiff Mr. Valdes seeks trial by jury and entry of an Order for final judgment against Defendant Estepan for compensatory and punitive damages, attorneys fees, costs, and such other relief that this Court deems just and proper.

## V.

### ATTORNEY'S FEES

65.  If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

## VI.

### JURY DEMAND

66.  Plaintiff respectfully requests a jury trial in this matter.

## PRAYER FOR RELIEF

**WHEREFORE** ALL ABOVE PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully Submitted this 23rd day of May 2025

By: /s/ Rawsi Williams
Rawsi Williams, Esq. R.N.
State Bar No. 103201
RAWSI WILLIAMS LAW GROUP
701 Brickell Ave., STE 1550
Miami FL  33131
TEL:  888-RawsiLaw/888-729-7452
Email:rawsi@rawsi.com;
Ajoseph2@rawsi.com;
docservice@rawsi.com
Lead Counsel for Plaintiff

S/ Frank T. Allen
FRANK T. ALLEN, Esq.
The Allen Firm, P.A.
Florida Bar Number 0033464
2582 Maguire Rd., 130
OCOEE, FL 34761
(407) 481-8103 (T)
(407)481-0009(F)
*Attorneys for Plaintiff*
AllenF551@aol.com.