**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-22370-CV-WILLIAMS**

JORGE L. VALDES,

Plaintiff,

v.

MIAMI-DADE SHERIFF'S OFFICE, *et al.*,

Defendants.
________________________________________/

# ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss the Complaint (DE 24) ("***Motion***"). The Motion is ripe for review.[1] For the reasons set forth below, the Motion (DE 24) is **GRANTED IN PART AND DENIED IN PART**.

As a threshold matter, the Court finds that it may consider the body-worn camera footage ("***BWC***") in addressing the Motion. "Under the incorporation-by-reference doctrine, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if (1) the plaintiff refers to certain documents in the complaint, (2) those documents are central to the plaintiff's claim, and (3) the documents' contents are undisputed." *Baker v. City of Madison, Ala.*, 67 F.4th

[1] On October 7, 2025, the Court issued an Order to Show Cause, requiring Plaintiff Jorge Valdes to show cause why the Motion should not be granted by default due to Mr. Valdes's failure to respond. (DE 27). Mr. Valdes filed a Response to Order to Show Cause (DE 28), and the Court set an October 8, 2025 deadline to file a response to the Motion. (DE 31). On October 8, 2025, Mr. Valdes filed his Response (DE 32) in opposition to the Motion, and on October 15, 2025, Defendants filed their Reply (DE 33) in support of the Motion.

1268, 1276 (11th Cir. 2023) (citation and quotation marks omitted) (finding body-worn camera footage was incorporated by reference in case where complaint alleged excessive force by police officers). Here, the Complaint asserts that the BWC corroborates Plaintiff Jorge Valdes's ("***Mr. Valdes***") factual allegations. (DE 1 ¶¶ 11, 14). The BWC also depicts the initial interaction between Defendant Officer Jorge Estepan ("***Officer Estepan***") and Mr. Valdes, which is central to Mr. Valdes's claims, and the authenticity of the footage is undisputed.[2] Therefore, the Court may properly consider it.

## I. FACTUAL BACKGROUND

On May 25, 2021, Officer Estepan was on-duty as a police officer for the Miami-Dade County Police Department (which has since transitioned into the Miami-Dade Sheriff's Office, or "***MDSO***"). (DE 1 ¶ 8). Officer Estepan observed Mr. Valdes driving a vehicle and initiated a traffic stop. (DE 1 ¶¶ 8–9). Upon approaching the driver-side window, Officer Estepan asked Mr. Valdes, "you got your driver's license?" Filed BWC: Axon Body 2 X81428801 (May 26, 2021) at 19:50 ("***BWC 1***"). Mr. Valdes then said something inaudible, and Officer Estpan responded, "because your tag is messed up, alright? Your license tag is bent upwards." *Id.* at 19:54; (DE 1 ¶ 13). According to the Complaint, Mr. Valdes's "tag was properly fully visible." (DE 1 ¶ 14). The BWC does not contradict this assertion:

[2] A USB drive containing the BWC was conventionally filed by Defendants. (DE 37).




Filed BWC: Axon Body 2 X81426311 (May 26, 2021) at 36:59 ("***BWC 2***"); *accord* BWC 1 at 19:45.

Officer Estepan then ordered, "let me have your license." BWC 1 at 20:01. Mr. Valdes did not refuse to give Officer Estepan his license, at least not audibly. *Id.* Nonetheless, within roughly two to three seconds, Officer Estpan reached through the window of the vehicle and opened the door. *Id.* at 20:04. Mr. Valdes stated, "you can't open my door, sir." *Id.* Officer Estepan responded by ordering Mr. Valdes to exit the vehicle. *Id.* at 20:07. Mr. Valdes told Officer Estepan, "you're on video, sir," but he did not verbally refuse to step out of the vehicle. *Id.* Within roughly three seconds of Officer Estepan's order to step out of the vehicle, Officer Estepan grabbed Mr. Valdes's arm and began handcuffing him. *Id.* at 20:10. Mr. Valdes asked, "what are you touching me for?" *Id.* At this point, Officer Estepan forcibly pulled Mr. Valdes out of the vehicle as Mr. Valdes yelled, "you're violating my rights" and "help me." *Id.* at 20:14. As Officer

Estepan struggled to remove Mr. Valdes from the vehicle, his BWC device fell. *Id.* The interaction is not visible on the footage until Officer Estepan retrieves his camera a few minutes later, by which point Mr. Valdes is handcuffed on the ground next to the vehicle. *Id.* at 25:03.[3]

According to the Complaint, while Mr. Valdes was still seat-belted in the vehicle, Officer Estepan assumed a position on top of him and punched him repeatedly. (DE 1 ¶ 19). He placed pressure on Mr. Valdes's neck, choked Mr. Valdes, and dragged Mr. Valdes onto the road. (DE 1 ¶¶ 20, 21, 23). Once other officers appeared, Officer Estepan told them that Mr. Valdes tried placing the vehicle in drive and punched him. BWC 1 at 28:22; (DE 1 ¶ 26). Mr. Valdes alleges that his neck was swollen and his face and upper body were bruised. (DE ¶ 32).

On May 23, 2025, Mr. Valdes brought suit against Officer Estepan, Miami-Dade County, and MDSO.[4] Mr. Valdes pleads the following claims: false arrest / false

[3] There appear to be a few contradictions between the BWC and the Complaint. Namely, the Complaint alleges that Mr. Valdes complied with Officer Estepan's request to hand over his license and registration. (DE 1 ¶ 15). However, Mr. Valdes does not appear to give Officer Estepan his license and registration during their initial encounter. BWC 1 at 20:00–20:14. Additionally, the Complaint states, "when Mr. Valdes complied by placing one foot out of his car to exit, Estepan GRABBED Mr. Valdes' [sic] hands . . ." (DE 1 ¶ 18). However, on the BWC footage, Mr. Valdes does not step outside of the vehicle prior to Officer Estepan grabbing his arm. BWC 1 at 20:00–20:14. Lastly, Mr. Valdes alleges that the officers denied him medical treatment, despite his requests, until the jail refused to accept him without medical clearance. (DE 1 ¶ 31). However, the BWC depicts an officer offering to have Fire Rescue evaluate Mr. Valdes on scene, which subsequently did occur. Filed BWC: Axon Body 2 X81425059 (May 5, 2026) ("***BWC 3***") at 1:05:54, 1:07:00–1:10:34.

[4] On September 8, 2025, Mr. Valdes voluntarily dismissed MDSO from this case because it was not in existence at the time of the incident. (DE 18). The Court therefore does not refer to MDSO when addressing claims previously alleged against it.

imprisonment against Officer Estepan (Count I); excessive force against Officer Estepan (Count II); civil rights violations against Miami-Dade County (Count III); respondeat superior liability against Miami-Dade County for the acts of Officer Estepan (Count IV); battery against Officer Estepan (Count V); and false arrest / false imprisonment against Officer Estepan (Count VI). (DE 1 ¶¶ 36–101). Counts I through III are brought pursuant to 42 U.S.C. § 1983, while Counts IV through VI are brought pursuant to Florida state law. (*Id.*)

## II. LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept factual allegations as true and draw reasonable inferences in the plaintiff's favor. *See Speaker v. U.S. Dep't. of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). While a claim need not provide "detailed factual allegations," it must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). "A complaint is facially plausible when there is sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019) (citations and quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Defendants move the Court to dismiss Mr. Valdes's case in its entirety. (DE 24). The Court disagrees with Defendants' argument that Count I must be dismissed because the BWC establishes that there was probable cause to arrest Mr. Valdes. Defendants also do not specifically provide any arguments addressing why Counts II and VI should be dismissed. The Court therefore declines to dismiss these counts.

The Court agrees with a portion of Defendants' argument regarding whether Count III properly pleads municipal liability and limits the claim accordingly. The Court also agrees with Defendants' arguments as to why Counts IV and V must be dismissed. Each of Defendants' arguments are addressed in turn.

### *A. Count I: False Arrest / False Imprisonment.*

Defendants begin by arguing that the traffic stop conducted by Officer Estepan was lawful and therefore that Mr. Valdes's false arrest and false imprisonment claim under § 1983 must be dismissed. "A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). "A traffic stop is a seizure within the meaning of the Fourth Amendment." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001).

To evaluate Defendants' argument that Officer Estepan's traffic stop was constitutional, the Court must determine whether there was a valid basis for it. An officer is permitted to stop a vehicle "when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic violations and equipment regulations

relating to the operation of motor vehicles." *United States v. Hawkins*, 934 F.3d 1251, 1259 (11th Cir. 2019) (internal citation and quotation marks omitted). "Probable cause to arrest exists if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) Further, "the *duration* of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." *Purcell*, 236 F.3d at 1277 (emphasis in original) (citations omitted).

Defendants contend that Officer Estepan was authorized to stop Mr. Valdes because he had probable cause to believe Mr. Valdes was violating Florida Statute § 316.605(1). (DE 24 at 6). That provision states, "[A]ll letters, numerals, printing, writing, the registration decal, and the alphanumeric designation shall be clear and distinct and free from defacement, mutilation, grease, and other obscuring matter, so that they will be plainly visible and legible at all times 100 feet from the rear or front." Fla. Stat. § 316.605. Even if an officer mistakenly believed that a tag did not comply with this provision at the time they initiated their stop, they lose probable cause to continue the seizure once they can determine that the tag is indeed compliant. *See Sowerby v. State*, 73 So. 3d 329, 331 (Fla. Dist. Ct. App. 2011) ("Thus, even if we assume that the officer made a proper initial stop of Mr. Sowerby's vehicle, he should have ceased asking for additional information when he found that the plate was, in fact, properly placed."); *C.f. State v. Diaz*, 850 So. 2d 435, 437 (Fla. 2003) ("[T]he law enforcement officer who made this stop because he was allegedly unable to read the expiration date on the vehicle's temporary tag, was in

fact able to read the date upon approaching the car[] . . . . Therefore, . . . he was without probable cause[.]").

The Complaint states that Officer Estepan acted without arguable probable cause because he initiated a pretextual traffic stop. (DE 1 ¶ 13). It further alleges that Officer Estepan "falsely stat[ed] that Mr. Valdes' permanent/metal 'tag was messed up…it's bent upward, it's supposed to be straight.'" (*Id.*) However, the tag was "properly fully visible." (*Id.* ¶ 14). Though the tag is not legible at all angles on the BWC, it is plainly legible when officers stand behind it.[5] *See* BWC 1 at 19:45; BWC 2 at 36:59. The BWC therefore does not contradict the Complaint on this point. Accordingly, the Court must accept Mr. Valdes's unrebutted claim that the tag was fully visible and hence that Officer Estepan lacked authority to stop and arrest him. *See Speaker*, 623 F.3d at 1379.

Notwithstanding, Defendants argue that Officer Estepan is entitled to qualified immunity even if he did not have probable cause to stop Mr. Valdes because he *arguably* had probable cause. (DE 24 at 6–7).

> To be entitled to qualified immunity, an official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. If he does that, the burden shifts to the plaintiff to establish (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. . . . A government official acts within his discretionary authority if

[5] According to the Complaint and the BWC, Officer Estepan's reason for stopping Mr. Valdes was because the tag on the vehicle was bent. The Parties have not provided any statutory authority or case law establishing that it is unlawful to drive a vehicle with a tag that is dented or bent, assuming that the writing on the tag is still plainly visible within 100 feet from the rear or front in accordance with Florida Statute § 316.605. The BWC does not resolve whether the tag could reasonably have been believed to be illegible within 100 feet from the rear or front of the vehicle that Mr. Valdes was driving. At this stage, because it does not contradict the Complaint's allegations, the Court accepts the Complaint's statement that the "tag was properly fully visible." (DE 1 ¶ 14).

> his actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority.

*Mikko v. City of Atlanta, GA.*, 857 F.3d 1136, 1143–44 (11th Cir. 2017) (citation and quotation marks omitted). Here, there is no dispute that Officer Estepan was acting within his discretionary authority at the time of the incident, as he was on duty and acting within the scope of his employment when he pulled Mr. Valdes over for a traffic stop. (DE 1 ¶ 8).

Therefore, Mr. Valdes has the burden of establishing that Officer Estepan violated a constitutional or statutory right that was clearly established at the time of the incident. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). At this stage, making reasonable inferences in his favor, Mr. Valdes has satisfied his burden. As described *supra*, it is clearly established that an officer must have probable cause to conduct a traffic stop and that an officer stopping someone because of a supposed defect of their tag loses probable cause once they can determine that the tag is compliant with Florida law. Even if a reasonable officer in Officer Estepan's shoes would have had probable cause to believe that the license plate on Mr. Valdes's vehicle was not visible while driving, that misconception would have been clarified immediately upon approaching Mr. Valdes's vehicle. At that point, any probable cause dissipated and there was no arguably valid basis to continue the seizure of Mr. Valdes. Thus, the qualified immunity defense is not applicable at this juncture.

***B. Count III: Monell Claim against Miami-Dade County.***

Count III alleges that Miami-Dade County is liable for Officer Estepan's misconduct. (DE 1 ¶¶ 60–64). A plaintiff may only hold a municipality liable under § 1983

where they are able "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). "A plaintiff can establish municipal liability under Monell in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. School Bd. of Miami-Dade Cty., Fla.*, 48 F.4th 1222, 1229 (11th Cir. 2022) (citation omitted). "Vague and conclusory allegations will not support a claim under § 1983." *Hall v. Smith*, 170 Fed. Appx. 105, 107–08 (11th Cir. 2006) (unpublished). The Complaint alleges two theories of municipal liability: that Miami-Dade County's failure to adequately train and supervise officers constitutes a policy and that Fourth Amendment violations are Miami-Dade County's custom due to their widespread nature. The former theory is sufficiently pleaded to survive a motion to dismiss, but the latter is not.

**1. Official policy of failing to train and supervise.**

"A local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Heath v. Miami-Dade Cty.*, 736 F. Supp. 3d 1149, 1167 (S.D. Fla. 2024) (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "To establish a 'deliberate or

conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "The Eleventh Circuit has declined to find that a specific number or threshold of events constitutes a pattern sufficient for failure to train liability under *Monell*. . . . What matters is whether the events were of such a nature or quality as to put the municipality on notice of the need to train." *Moore v. Pearson*, No. 7:25-CV-00133, 2026 WL 498610, at *5 (M.D. Ga. Feb. 23, 2026); *see Am. Fed'n. of Labor and Cong. of Indus. Orgs. v. City of Miami, FL*, 637 F.3d 1178, 1189 (11th Cir. 2011) ("A plaintiff may demonstrate notice by showing a 'widespread pattern of prior abuse' or even a single earlier constitutional violation.").

In *Moore*, the court considered whether conduct by a handful of Georgia law enforcement personnel against two criminal defendants over the course of six years, including presenting false testimony, fabricating witness statements, and arresting the defendants without probable cause, was sufficient to infer that the City of Moultrie was deliberately indifferent. 2026 WL 498610 at *6. The court concluded that "the brazen nature of these alleged constitutional violations, occurring over several years in a high profile case and committed against two individuals, with the alleged knowledge of the chief of police are sufficient to sustain *Monell* liability for failure to train." *Id.* Similarly, in *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1501 (11th Cir. 1986), the Eleventh Circuit found that there was sufficient evidence from which a jury could have found city officials were on notice of the need to take action to prevent police officers from continuing

to use excessive force. The evidence presented included four specific prior instances of police misconduct, as well as undetailed testimony that a training officer was disciplined regarding another incident. *Id.* at 1498.

The Complaint here alleges comparable evidence that county officials should have been on notice of the need to train and supervise officers as to the appropriate use of force. Although the allegations pleaded in support of this count consist mainly of conclusory statements, the Complaint also includes four examples of police misconduct spanning from 2016 to 2020. (DE 1 at 13 n.1). In the first case provided, an officer was arrested for battery and falsification of a police report due to his treatment of an unarmed civilian. (*Id.*) In the second, high-profile case, officers deployed excessive force when chasing bank robbers, leading to their indictment for manslaughter. (*Id.*) In the third case, the Miami-Dade Police Department allegedly received public backlash after officers threw a woman out of her wheelchair during her arrest for trespassing and panhandling in a parking lot. (*Id.*) Lastly, the Complaint mentions a 2016 case in which two officers were convicted of falsifying police reports. (*Id.*) The first three examples involve excessive force. Only one of the cases involves an allegation of an unlawful arrest. The last example more generally regards dishonesty, but the Complaint does not specify whether the convicted officers were involved in unlawful arrests or use of excessive force against civilians.

Given the purported media attention that these cases received and making reasonable inferences in Mr. Valdes's favor, the Court concludes that Mr. Valdes has pleaded sufficient facts to establish that Defendants were on notice of the need to train

officers as to the appropriate use of force. *See Moore*, 2026 WL 498610 at *6 (noting high profile nature of case when concluding the facts alleged were sufficient to sustain Monell liability); *Pipitone v. City of New York*, 57 F. Supp. 3d 173, 193 (E.D.N.Y. 2014) (finding that commissioner was "almost certainly aware of the allegations" against detective given the attention it received in the press). Mr. Valdes has also alleged that training on this topic has been inadequate, leading to repeated instances of unconstitutionally excessive force. (DE 1 ¶¶ 67, 68, 74). Therefore, the Court declines to dismiss Mr. Valdes's *Monell* claim alleging a theory of liability for failure to supervise and train officers but narrows the claim to allegations specifically involving police use of force.

**2. Custom or widespread practice.**

"To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law[.]" *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (citation and quotation marks omitted). Defendants argue that Mr. Valdes fails to meet this standard. (DE 24 at 11). The Court agrees.

Although the Complaint alleges four examples of police misconduct that may have put Miami-Dade County on notice of the need to better train or supervise officers, these examples do not amount to a widespread practice that is "permanent and well settled." *Brown*, 923 F.2d at 1481; *see Gibson v. City of W. Palm Beach*, No. 9:24-CV-81290, 2025 WL 1272843, at *4 (S.D. Fla. Apr. 15, 2025) (finding plaintiff failed to allege longstanding and widespread practice or custom by "point[ing] to four instances of excessive force by

City officers over a thirteen-year span."); *Marantes v. Miami-Dade Cty.*, 649 Fed. Appx. 665, 673 (11th Cir. 2016) ("[H]e has cited only two incidences of alleged excessive force—his arrest and a homicide involving the same set of officers who arrested him. These allegations do not show that the County had a 'longstanding and widespread practice' of encouraging excessive force."). Although three of the four prior cases cited by Mr. Valdes included excessive use of force, they cannot be said to form a settled, widespread practice. However, Mr. Valdes may amend this count to proceed under a theory of municipal liability premised on an unofficial custom should he obtain information demonstrating a more widespread and settled practice. *See Bowe v. City of Hallandale Beach*, No. 0:16-CIV-60993, 2017 WL 5643304, at *4 (S.D. Fla. Aug. 7, 2017) (finding that, after amendment of Monell claim, plaintiff established widespread practice constituting custom by "compil[ing] forty incidents of racially targeted SWAT raids.").

### ***C. Count IV: Supervisory Liability***

Count IV alleges that Defendants are liable under a respondeat superior theory for Officer Estepan's "acts of false arrest, false imprisonment, excessive force, and all other claims asserted herein against Plaintiff." (DE 1 ¶ 88). "[U]nder Florida law, respondeat superior, like agency, is a doctrine of liability, not itself a cause of action." *Trump v. Clinton*, 626 F. Supp. 3d 1264, 1318 (S.D. Fla. 2022), *aff'd in part, vacated in part, remanded,* 161 F.4th 671 (11th Cir. 2025). "Rather, it is a *theory* of liability." *Chunhong Jia v. Boardwalk Fresh Burgers & Fries, Inc.*, No. 8:19-CV-2527-T-33CPT, 2020 WL 5628734, at *2 (M.D. Fla. Sept. 21, 2020) (emphasis in original). Courts differ in whether they allow standalone counts alleging respondeat superior liability to proceed. *Compare*

*id.* (dismissing respondeat superior count); *Colite Int'l. Inc. v. Robert L. Lipton, Inc.*, No. 05-60046-CIV, 2006 WL 8431505, at *12 (S.D. Fla. Jan. 20, 2006) ("As such, Plaintiffs' count for respondeat superior liability should be dismissed with prejudice, since no such cause of action exists for respondeat superior."), *with Innocent v. United States*, No. 23-CV-24159, 2024 WL 6963261, at *4 (S.D. Fla. June 14, 2024) ("The Court declines to dismiss Plaintiff's *respondeat superior* claim."); *Doe v. St. John's Episcopal Par. Day School, Inc.*, 997 F. Supp. 2d 1279, 1282, 1289 (M.D. Fla. 2014) (failing to dismiss count alleging respondeat superior liability against an employer for actions pleaded against employee in other counts).

The Court need not resolve whether Count IV may proceed as a standalone count alleging respondeat superior liability because it must be dismissed as a shotgun pleading. A count is pled as a shotgun pleading if it "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). "[C]ourts have dismissed claims labeled only *respondeat superior* where it was unclear under what cause of action the claim was brought . . ." *Innocent*, 2024 WL 6963261, at *4. Count IV squarely meets the definition of a shotgun pleading by pleading a cause of action "for all other claims asserted herein against Plaintiff." (DE 1 ¶ 88). As a result, Count IV is dismissed.

***D. Count V: Battery***

Lastly, Defendants argue that Mr. Valdes's battery claim is subsumed into his false arrest claims. (DE 24 at 19). The Court agrees. "In Florida, a plaintiff's battery claim is subsumed into his unlawful arrest claim if the battery claim concerns an act incident to

arrest." *Saint-Vil v. City of Miami Beach*, No. 19-24640, 2022 WL 1591492, at *13 (S.D. Fla. May 19, 2022) (emphasis in original) ("Putting aside the matter of whether Officer Rodriguez's use of the taser was justified, the record shows that he indisputably tased Mr. Saint-Vil *after* detaining him. . . . As such, Mr. Saint-Vil's battery claim is subsumed within his false arrest claim and fails as an independent charge."); *see Blanton v. Miami-Dade Cty.*, No. 07-22282-CIV, 2007 WL 3118517, at *2 (S.D. Fla. Oct. 23, 2007) ("Nonetheless, if the arrest was made without probable cause, as alleged, then the false arrest claim subsumes any claim for battery or excessive force."). Mr. Valdes alleges that he was grabbed and beaten as Officer Estepan attempted to effectuate the unlawful arrest. (DE 1 ¶¶ 18–23). Given that the alleged battery occurred as part of the unlawful arrest, Count V is subsumed into the false arrest claims and is dismissed.

## IV. CONCLUSION

Accordingly, upon review of the Motion and record, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss (DE 24) is **GRANTED IN PART AND DENIED IN PART**.
2. Count III shall be limited solely to allegations regarding Miami-Dade County's liability for failing to train and supervise officers regarding lawful use of force. The allegations pleaded in support of this count regarding unlawful detention, unlawful arrests, and falsification of information by officers are **STRICKEN**. Likewise, the allegations pleaded in support of this count about Miami-Dade County's unconstitutional customs are **STRICKEN**.
3. Counts IV and V are **DISMISSED WITHOUT PREJUDICE**.

4. Mr. Valdes has leave to file an amended complaint within **seven (7) days of the date of this Order**.

5. Defendants are directed to file an Answer to the Complaint, or to an amended complaint if one is filed, within **twenty-one (21) days of the date of this Order**.

**DONE AND ORDERED** in Chambers in Miami, Florida on this 30th day of September, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE